UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 2:19-cr-00151-13 |
| : | |
| ALEXIS LEANDRY-OCASIO : | |

**O P I N I O N**
**Defendant's Motion to Suppress, ECF No. 426 - Denied**

**Joseph F. Leeson, Jr.**                                                                                    **January 22, 2024**
**United States District Judge**

I.   **INTRODUCTION**

Defendant Alexis Leandry-Ocasio is charged with conspiracy to distribute and possess with intent to distribute 40 grams or more of fentanyl and heroin and with multiple counts of distribution or possession with intent to distribute a mixture and substance containing a detectable amount of heroin and/or fentanyl, including distribution of heroin that resulted in death and serious bodily injury in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C) and 18 U.S.C. § 2.  Count Six, which charges Leandry-Ocasio with possession with intent to distribute heroin recovered during the search of a garage at 1031 Buttonwood Street in Reading, Pennsylvania on March 1, 2018, is the subject of a Motion to Suppress.

The Motion alleges: (1) the description of the premises in the search warrant of an "attached" garage is incorrect because the garage was detached, as such the warrant fails for ambiguity and/or lack of particularity; and (2) the evidence seized from under the stairway was beyond the scope of the warrant.  *See* ECF No. 426.  In response, the Government argues: (1) Leandry-Ocasio lacks standing to contest the search of a building from which he had been

1
011924

evicted; (2) even if he does have standing, the description of the premises was not inaccurate because the garage abuts- and is physically attached to- the exterior stairway and shares the roof joined to the house; (3) even if the description was inaccurate, the warrant met the particularity requirement because it was sufficient for a reasonable officer to identify the place to be searched; (4) even if the warrant did not meet the particularity requirement, the officers relied on the warrant in good faith; and (5) officers found all the seized evidence within the garage.  *See* ECF Nos. 430-431.  An evidentiary hearing on the Motion was held on August 30, 2023.[1]  For the reasons set forth below, this Court finds that Leandry-Ocasio lacks standing to contest the search and, regardless, that the warrant was sufficiently particular, the good faith exception to the exclusionary rule would apply, and the search did not exceed the scope of the warrant.  The Motion to Suppress is denied.

## II. FINDINGS OF FACT[2]

**Evidentiary Hearing**

1. Task Force Officer ("TFO") Scott Errington testified at the evidentiary hearing on August 30, 2023.

2. The testimony of TFO Errington is credible and accepted as fact.[3]

---

[1] After the evidentiary hearing, new counsel was appointed to represent Leandry-Ocasio. New counsel was given an opportunity to file additional pretrial motions, supplemental briefing on the Motion to Suppress, and/or to request a new evidentiary, but declined.  Counsel, after review of the Motion to Suppress, the Government's responses, the affidavit of probable cause and all other relevant discovery materials, indicated that the Motion to Suppress should be decided on the record created on August 30, 2023, which is consistent with the repeated requests of Leandry-Ocasio.  *See* ECF No. 465.

[2] *See* Fed. R. Crim. P. 12(d) (directing that "the court must state its essential findings on the record")

[3] The Court makes this determination after having listened to the testimony of TFO Errington and having viewed his demeanor.  The Court finds, *inter alia*, that TFO Errington had a good recollection of the events, his account was believable, and his testimony was consistent

3. TFO Errington has been assigned to the Allentown Resident Office of the Drug Enforcement Agency ("DEA") as a task force officer since August 2008 and has also been employed by the Berks County District Attorney's Office as a detective in the narcotics unit since 1997. *See* Transcript of Evidentiary Hearing at pp. 19-20, August 30, 2023, (hereinafter "Tr. __"), ECF No. 456.

4. TFO Errington had prior employment as a police officer with the Borough of Pottstown, where he was assigned to narcotics investigations. Tr. 20.

5. As a task force officer, TFO Errington's duties are to enforce drug law for violations and to conduct investigations of suspected violators at both the state level and the federal level. Tr. 20.

6. The number of investigations regarding illegal controlled substances in which he has participated is "probably in the thousands." Tr. 20-21.

7. TFO Errington has been to numerous schools and/or training seminars, including DEA's basic drug investigator school and more than twenty schools put on by the FBI, the Pennsylvania State Police, the Pennsylvania Attorney General's office. Tr. 20.

8. On March 1, 2018, TFO Errington was engaged in an investigation of the defendant, Alexis Leandry-Ocasio, for the suspicion that Leandry-Ocasio was dealing drugs, specifically heroin laced with fentanyl. Tr. 21.

9. On that date, TFO Errington and law enforcement spoke with Leandry-Ocasio's former girlfriend, Rachel Burch,[4] regarding drugs that she had turned over to the Reading Police

---

throughout and was confirmed by other evidence. To the extent any of his testimony was challenged, as mentioned below, such challenges were not persuasive.

[4] The transcript from the suppression hearing spells Ms. Burch's last name as "Berch." Because this is based on a phonetic spelling only, this Court will use the spelling of her last name ("Burch") as provided in the search warrant.

Department, which belonged to Leandry-Ocasio but were in her car. Tr. 21.

10. Ms. Burch informed TFO Errington that until recently she and Leandry-Ocasio lived at 1031 Buttonwood Street, where he was engaged in selling heroin and fentanyl. Tr. 22.

11. Ms. Burch stated that she believed there were drugs still in the garage of the residence. Tr. 22.

12. TFO Errington thereafter spoke with the landlord at 1031 Buttonwood Street and the landlord confirmed that Ms. Burch and Leandry-Ocasio had been renting the first-floor apartment and the garage at that address until February 26, 2018, when they were evicted for non-payment of rent. Tr. 22-23.

13. TFO Errington identified the docket sheet of the eviction action: *C&A Realty Management LLC v. Alexis Leandry*, MJ-23103-LT-0000042-2018 (Magisterial District Judge 23-1-03, Berks County) and it was admitted as Government's Exhibit 14. Tr. 23, 27; Gov't Ex. 14.

14. The public docket shows that a landlord/tenant complaint was filed on January 18, 2018, and that judgment was entered for plaintiff on January 29, 2018. Tr. 24; Gov't Ex. 14.[5]

15. An Order for Possession was issued and successfully served on February 12, 2018. *Id.*

16. On February 26, 2018, TFO Errington and members of the DEA were conducting surveillance of 1031 Buttonwood at which time they observed someone arrive at the residence, unlock it, and stand outside while Leandry-Ocasio and Ms. Burch moved out. Tr. 24-25.

17. Specifically, Leandry-Ocasio, a couple of his friends, and Ms. Burch were observed going in and out of the property, removing items, and putting them in two vehicles

---

[5] The Court takes judicial notice of the docket sheet.

parked outside.  Tr. 24-25.

18. One of the two vehicles was stopped later that day on February 26, 2018.  Tr. 25.

19. At the traffic stop, TFO Errington spoke with Leandry-Ocasio, who advised that he was in the process of moving his items out of 1031 Buttonwood because he had been evicted.  Tr. 25.

20. Ms. Burch also informed TFO Errington of the eviction when they spoke on March 1, 2018.  Tr. 22.

21. On March 1, 2018, TFO Errington and his partner drove Ms. Burch to 1031 Buttonwood Street where she pointed out the garage she believed there were drugs.  Tr. 22, 26.

22. That day, TFO Errington applied for a search warrant for the "garage located at and attached to 1031 Buttonwood Street, Reading, Pa."  Tr. 26-28; Gov't Ex. 15.

23. The search warrant was admitted as Government Exhibit 15.  *Id.*

24. Also admitted was a printout from Google maps showing an aerial view of a four to five block radius of 1031 Buttonwood Street and a street-level view of the front of 1031 Buttonwood Street as if looking at it from the middle of the street on Buttonwood.  Tr. 29; Gov't Ex. 13.

25. The building is located at the corner of Buttonwood Street and Mulberry Street.  Gov't Ex. 13.

26. TFO Errington explained that the garage to 1031 Buttonwood Street is on Mulberry Street just north of the pictured building.  Tr. 29.

27. TFO Errington further identified a photograph that he took of 1031 Buttonwood Street depicting the rear part of the house as well as the garage.  Tr. 29.

28. The photograph was admitted as Government's Exhibit 12.  Tr. 29-30; Gov't Ex.

12.

29. This photograph shows the rear part of the house, to which a black mailbox with the numbers "1031" is attached. Gov't Ex. 12.

30. To the left of the house in the photograph is the garage, which has two large white plastic garage doors with the numbers "1031" printed immediately to the right of the doors. *Id.*

31. Between the garage and the house, connected to each, is an outside stairway leading to the second floor apartment of 1031 Buttonwood Street. Tr. 31; Gov't Ex. 12.

32. As the stairway ascends, the garage extends underneath the stairway and is attached to the house. Tr. 31-32.

33. The extended section of the garage contains a storage area that is only accessible from inside the garage. Tr. 31.

34. A photograph of this area was admitted as Government Exhibit 4.

35. The photograph, which was taken from inside the garage, depicts a doorway opening leading from the main part of the garage to the portion underneath the stairway. Gov't Ex. 4.

36. Also visible in the photograph is the siding of the house, which is the shared wall with this portion of the garage. Tr. 31-32.

37. In this storage area of the garage, TFO Errington, during the search on March 1, 2018, located a blue tote, a picture of which was admitted as Government's Exhibit 6. Tr. 32-33.

38. From inside the blue tote, TFO Errington recovered a farkle cup that contained what appeared to be nine bundles of heroin. Tr. 34.

39. These bundles were sent to the lab for testing and were determined to contain just under ninety bags. Tr. 34.

**Search Warrant**[6]

40.     The search warrant application and probable cause affidavit are consistent with and support TFO Errington's testimony at the suppression hearing.

41.     Among other things, the probable cause affidavit states that Leandry-Ocasio had been renting and living at 1031 Buttonwood Street until February 26, 2018, and had also been renting the garage attached to the building.

42.     It details TFO Errington's conversations with Ms. Burch on March 1, 2018, regarding the drugs belonging to Leandry-Ocasio that she found in her car, her living arrangements with Leandry-Ocasio at 1031 Buttonwood Street prior to their eviction, her observations of drugs and packaging materials in the garage the day before they were evicted, and her statements that on February 28, 2018, Leandry-Ocasio was trying to find someone to go to the garage to retrieve the drugs.

43.     The probable cause affidavit states that on March 1, 2018, TFO Errington drove Ms. Burch to the area "where she pointed out the garage that was rented by Leandry-Ocasio."

---

[6] The search warrant was filed of record as an attachment to the Government's Response to the Motion to Suppress.  *See* ECF No. 431-1.  It was also introduced as an exhibit at the suppression hearing.  *See* Gov't Ex. 15.  The findings of fact in this subsection are based on the application for search warrant and affidavit of probable cause unless otherwise noted.

At the suppression hearing, Leandry-Ocasio asked TFO Errington a number of questions regarding the signatures and court seals on the search warrant, suggesting that the court's seals were stamped on the search warrant prior to it being signed by the magisterial district judge.  *See* Tr. 40-45.  This line of questioning was unsupported and unpersuasive.  There is no evidence to suggest that the court seals were stamped on the search warrant prior to it being signed or that the warrants were altered in any way.  Similarly, Leandry-Ocasio's questions of TFO Errington about the warrant control number and docket number showed only Leandry-Ocasio's misunderstanding of procedure, not any problems with the search warrant.  *See* N.T. 39-41.  As to this latter line of questioning, the Court notes that at a status of counsel hearing on November 15, 2022, this Court explained to Leandry-Ocasio, who had complained that his attorney failed to challenge the warrant on those grounds, that his suggestion the search warrant was invalid due to purported issues with the warrant control number and the docket number listed on the search warrant application lacked merit.

44. The probable cause affidavit also details the history of the investigation into Leandry-Ocasio's suspected drug distribution activities, which included surveillance of and controlled buys at 1031 Buttonwood Street in the weeks prior to the search.

45. The search warrant describes the premises to be searched as: "The garage located at and attached to 1031 Buttonwood Street, Reading, Pa. Said address being located at the Northeast corner of Buttonwood and Mulberry Sts. with said garage being just North of the building on Mulberry St. and having two large white plastic garage doors. Also having '1031 2nd flr' just to the right of the garage door."

46. The search warrant was approved by a magisterial district judge on March 1, 2018.

### III.   CONCLUSIONS OF LAW

"As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). But, "once the defendant has established a basis for his motion, . . . the burden shifts to the government to show the search or seizure was reasonable." *Id.*

#### A.   Leandry-Ocasio lacks standing to challenge the search.

"To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) (citing *Rakas v. Illinois*, 439 U.S. 128, 132-34 (1978)). "[T]he proponent of a motion to suppress 'bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in [the place searched].'" *Stearn*, 597 F.3d at 551 (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (holding that it is the defendant's burden to establish standing)). *See also United States v.*

*Mosley*, 454 F.3d 249, 253 n.5 (3d Cir. 2006) ("The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated."). The court must determine "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Stearn*, 597 F.3d at 551(citing *Rakas*, 439 U.S. at 140). The defendant must show that he had a subjective expectation of privacy in the area searched and that his expectation was objectively reasonable. *See United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014) (citing *Rakas*, 439 U.S. at 143-44). "The subjective prong requires a court to determine whether the defendant, 'by his conduct, has exhibited an actual expectation of privacy.' The objective prong requires a court to determine whether the defendant's 'expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *United States v. Cortez-Dutrieville*, 743 F.3d 881, 883-84 (3d Cir. 2014) (internal citations omitted) (quoting *Bond v. United States*, 529 U.S. 334, 338 (2000); *United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011)).

Leandry-Ocasio did not have an expectation of privacy in the garage at 1031 Buttonwood Street after February 26, 2018, because he had been evicted. Accordingly, he does not have standing to challenge the search warrant issued for the garage on March 1, 2018, and/or the search of the garage on that date. *See United States v. Dollson*, No. 13-277-1, 2014 U.S. Dist. LEXIS 13210, at *6-7 (E.D. Pa. Jan. 31, 2014) (concluding that because the defendant had been evicted from the residence several days before the search, he did not have an expectation of privacy in the residence and therefore did not have standing to raise a Fourth Amendment challenge to the search of the residence). Leandry-Ocasio's Motion to Suppress is denied. Nevertheless, the Court will address the merits of the Motion to Suppress.

### B. The good faith exception applies as the warrant does not lack particularity.

Unless the motion to suppress presents a Fourth Amendment argument that must be resolved "to guide future action by law enforcement officers and magistrates," courts should turn "immediately to a consideration of the officers' good faith." *United States v. Leon*, 468 U.S. 897, 902-25 (1984) (holding that "[i]n the ordinary case, an officer cannot be expected to question the [issuing authority's] . . . judgment that the form of the warrant is technically sufficient"). If "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable," the good faith exception applies. *See id.*; *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (To determine whether the good faith exception applies, the court should inquire "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."). The Third Circuit has "identified four narrow situations in which an officer's reliance on a warrant is not reasonable:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
> (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 146 (3d Cir. 2002).

There is no suggestion or evidence that any of the first three situations apply here.[7] Although Leandry-Ocasio, arguing that the search warrant lacks particularity because the

---

7   Even if the description of the garage as "attached" is inaccurate, which it is not, there is no evidence to suggest that TFO Errington prepared a deliberately or recklessly false affidavit.

description in the search warrant of an "attached" garage is incorrect because the garage was detached, asserts that the fourth situation does apply, the evidence does not support his argument.

The Fourth Amendment requires that warrants particularly describe "the place to be searched, and the persons or things to be seized." *United States v. Ritter*, 416 F.3d 256, 264–65 (3d Cir. 2005) (quoting U.S. Const. amend. IV). Particularity requires a mere "fair probability" that evidence will be found in a particular place. *United States v. Robertson*, 305 F. 3d 164, 167 (3d Cir. 2002); *United States v. Grubbs*, 547 U.S. 90, 95 (2006). "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). "In determining whether the description of a premises in a search warrant is sufficient, the court [also] considers . . . 'whether there is any reasonable probability that another premise might be mistakenly searched.'" *Rodriguez v. Britton*, No. 09-443, 2009 U.S. Dist. LEXIS 125610, at *28 (E.D. Pa. Nov. 10, 2009) (quoting *Hickman v. Marzec*, 2008 U.S. Dist. LEXIS 70256 (D. Del. Sept. 18, 2008), *adopted by* 2010 U.S. Dist. LEXIS 20691, at *1 (E.D. Pa. Mar. 5, 2010). "The standard . . . is one of practical accuracy rather than technical nicety." *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975). Furthermore, "the particularity requirement must be applied with a practical margin of flexibility." *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2017).

The description in the search warrant at issue here includes not only the street address of the garage and its location relative to the cross streets, but also a physical description of the garage: ". . . said garage. . . having two large white plastic doors [a]lso having '1031 2nd flr' just to the right of the garage door." Gov't Ex. 15. Although a stairway, which was attached on its left to the garage and on its right to the house, separated the physical buildings toward the front/side of the garage, the garage was attached to the house toward the back/side of the garage

where it extended underneath the stairway and they shared a wall. The description of an "attached" garage is therefore correct. Regardless, even if the buildings were not actually attached, the description of the garage was sufficient to enable the executing officer to locate and identify the premises with reasonable effort. *See Steele*, 267 U.S. at 503. Moreover, because Ms. Burch pointed out the garage to TFO Errington, who authored the search warrant and was familiar with the property from prior surveillance, there was no possibility that the wrong place would be searched. *See United States v. Santana*, No. 22-1601, 2023 U.S. App. LEXIS 16920, at *8-9 (3d Cir. July 5, 2023) (concluding that although the search warrant mistakenly referred to the wrong parcel number, the warrant sufficiently identified which parcel was intended to be searched and that because law enforcement had already executed the warrant for the correct parcel number, "there was no reasonable likelihood that the wrong item would be searched").

The officers' reliance on the search warrant was therefore reasonable and the good faith exception precludes suppression.

C. **The search did not exceed the scope of the warrant.**

Leandry-Ocasio's argument that the search of the storage section of the garage extending underneath the stairway was beyond the scope of the warrant is unsupported. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982) ("When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand."). Although a

doorway opening led from the main part of the garage to the storage area, this area was also part of and accessible only through the garage. Thus, the search of this area was permitted by the warrant authorizing a search of the "garage" in the same way that a search warrant for a house permits the search of interior closets. *See id.* (holding that "a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found").

The search was properly conducted within the confines of the warrant.

## IV.   CONCLUSION

Leandry-Ocasio was evicted prior to the search of the garage at 1031 Buttonwood Street. He therefore lacks standing to challenge the search and the Motion to Suppress is denied. Moreover, the search warrant sufficiently particularized the place to be searched and the officers' good faith reliance on the same precludes suppression. Finally, the search did not exceed the scope of the warrant. For all these reasons the Motion to Suppress is denied.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge